**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DENNIS J. SOLOMON,

*Plaintiff*,

v.                                                       No. 1:07-cv-01811-EGS

UNIVERSITY OF SOUTHERN
CALIFORNIA *et al.*,

*Defendants.*

**USC'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Howard S. Hogan
(D.C. Bar No. 492002)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for University of Southern California*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ........................................................................................................1

ARGUMENT .............................................................................................................5

I.      PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS
*RES JUDICATA.* .........................................................................................5

II.     MR. SOLOMON'S COMPLAINT WAS FILED IN VIOLATION OF
AN EXPLICIT COURT ORDER. .............................................................8

III.    THE COMPLAINT SHOULD ALSO BE DISMISSED AGAINST
USC ON THE MERITS................................................................................9

      A.    Mr. Solomon's First And Second Counts Fail Because They
Set Forth No Basis to Set Aside The TTAB Order Denying His
Trademark Application. ....................................................................10

            1.    Dismissal Is An Appropriate Sanction For Non-
Compliance With Discovery Orders................................11

            2.    Defendant Had Standing To Oppose Plaintiff's
Trademark Registration. ..................................................12

      B.    Plaintiff's First Count Also Fails As A Civil Rights Claim..........................13

      C.    Plaintiff's Third Count, Alleging "Attempt To Monopolize,
Interference With Interstate Commerce," Fails As A Matter Of
Law. ..................................................................................................16

            1.    Plaintiff Has Not Alleged The Necessary Elements Of
A Sherman Act Claim......................................................16

            2.    Even Reading Plaintiff's Third Count As A RICO
Claim, It Still Lacks The Necessary Elements...................18

      D.    Plaintiff's Fifth Count, "Interference with Business Relations,
Unfair Competition," Is Insufficient As A Matter Of Law..........................19

            1.    Plaintiff's Own Allegations Contradict The Elements
Of An Interference With Business Relations Claim. .........................19

            2.    Plaintiff Cannot Allege The Elements Of A Lanham
Act Unfair  Competition Claim.........................................21

E.      Plaintiff's Fraud Claim, Count IV, Does Not Allege Any Fraud
        Against Himself. ........................................................................................21

F.      Any Trade Secret Misappropriation Claim Also Fails As A
        Matter Of Law ............................................................................................22

IV.     GIVEN PLAINTIFF'S LENGTHY HISTORY OF VEXATIOUS
        LITIGATION, AN ORDER LIMITING ANY ADDITIONAL
        FILINGS IS APPROPRIATE. ....................................................................23

CONCLUSION ...........................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alicke v. MCI Communications Corp.*,
    111 F.3d 909 (D.C. Cir. 1997) ............................................................ 22

*Allen v. McCurry*,
    449 U.S. 90 (1980) .............................................................................. 5

*Apotex, Inc. v. FDA*,
    393 F.3d 210 (D.C. Cir. 2004) ............................................................ 7

*Ass'n for Intercollegiate Athletic for Women v. NCAA*,
    735 F.2d 577 (D.C. Cir. 1984) ............................................................ 17

*Automated Datatron, Inc. v. Woodcock*,
    659 F.2d 1168 (D.C. Cir. 1981) .......................................................... 11

*Banks v. Gonzales*,
    496 F. Supp. 2d 146 (D.D.C. 2007) ..................................................... 10

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
    383 F. Supp. 2d 32 (D.D.C. 2005) ....................................................... 20

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................ 9

*Bivens v. Six Unknown Named Agents*,
    403 U.S. 388 (1971) ............................................................................ 13

*Bridges v. Kelly*,
    977 F. Supp. 503 (D.D.C. 1997) .......................................................... 15

*Brown v. Califano*,
    75 F.R.D. 497 (D.D.C. 1977) ............................................................... 21

*Brown v. Twentieth Century Fox Film Corp.*,
    799 F. Supp. 166 (D.D.C. 1992) .......................................................... 21

*Committee to Defend U.S. Constitution v. Moon*,
    776 F. Supp. 568 (D.D.C. 1991) .......................................................... 18

*Covad Communications Co. v. Bell Atlantic Corp.*,
    407 F.3d 1220 (D.C. Cir. 2005) .......................................................... 2

*Dial A Car, Inc. v. Transportation, Inc.*,
884 F. Supp. 584 (D.D.C. 1995) .................................................................... 16, 17

*DSMC, Inc. v. Convera Corp.*,
479 F. Supp. 2d 68 (D.D.C. 2007) .................................................................... 23

*Dye v. United States*,
516 F. Supp. 2d 61 (D.D.C. 2007) .................................................................... 9, 10

*EDM & Associates, Inc. v. GEM Cellular*,
597 A.2d 384 (D.C. 1991) .................................................................... 19

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995) .................................................................... 18

*FDIC v. Bank of New York*,
479 F. Supp. 2d 1 (D.D.C. 2007) .................................................................... 23

*Genetic Systems Corp. v. Abbott Laboratories*,
691 F. Supp. 407 (D.D.C. 1988) .................................................................... 20

*Grand Canyon West Ranch, LLC v. Hualapai Tribe*,
78 U.S.P.Q.2d 1696 (T.T.A.B. 2006) .................................................................... 14

*Green v. DOD Dependent Schools-Europe*,
514 F. Supp. 2d 79 (D.D.C. 2007) .................................................................... 10

*GTE New Media Services, Inc. v. Ameritech Corp.*,
21 F. Supp. 2d 27 (D.D.C. 1998) .................................................................... 17

*Haynes v. Health & Human Services*,
879 F. Supp. 127 (D.D.C. 1995) .................................................................... 15

*Hinton v. Shaw Pittman Potts & Trowbridge*,
257 F. Supp. 2d 96 (D.D.C. 2003) .................................................................... 10

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992) .................................................................... 18

*Ivey v. United States Department of the Treasury*,
484 F. Supp. 2d 124 (D.D.C. 2007 .................................................................... 5

*Johnson v. Chase Manhattan Mortgage Corp.*,
No. 04-344 (EGS), 2006 U.S. Dist. LEXIS 60760
(D.D.C. Aug. 28, 2006) .................................................................... 21

*Judicial Watch, Inc. v. FDA*,
514 F. Supp. 2d 84 (D.D.C. 2007) .................................................................... 9

*Kaempe v. Myers,*
   367 F.3d 958 (D.C. Cir. 2004) ................................................................. 13

*Kauffman v. Anglo-American School of Sofia,*
   28 F.3d 1223 (D.C. Cir. 1994) ................................................................. 15

*Lopez v. Huff,*
   508 F. Supp. 2d 71 (D.D.C. 2007) ............................................................ 6

*M.K. v. Tenet,*
   196 F. Supp. 2d 8 (D.D.C. 2001) ............................................................ 14

*Martin-Trigona v. Gellis & Melinger,*
   830 F.2d 367 (D.C. Cir. 1987) ................................................................... 9

*McLaughlin v. Bradlee,*
   599 F. Supp. 839 (D.D.C. 1984) ............................................................... 6

*McManus v. District of Columbia,*
   Civ. A No. 07-252 (CKK), 2007 U.S. Dist. LEXIS 94797
   (D.D.C. Dec. 31, 2007) ......................................................................... 10

*Mikkilineni v. Penn National Mutual Casualty Insurance Co.,*
   271 F. Supp. 2d 142 (D.D.C. 2003) ......................................................... 23

*Naartex Consulting Corp. v. Watt,*
   722 F.2d 779 (D.C. Cir. 1983) ................................................................. 23

*National Hockey League v. Metropolitan Hockey Club,*
   427 U.S. 639 (1976) ............................................................................... 11

*NCAA v. Tarkanian,*
   488 U.S. 179 (1988) ............................................................................... 15

*Proctor v. Millar Elevator Service Co.,*
   8 F.3d 824 (D.C. Cir. 1993) ...................................................................... 6

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
   124 F.3d 430 (3d Cir. 1997) .................................................................... 16

*Richards v. Duke University,*
   480 F. Supp. 2d 222 (D.D.C. 2007) ......................................................... 15

*Ritchie v. Simpson,*
   170 F.3d 1092 (Fed. Cir. 1999) ......................................................... 12, 13

*Rogers v. Ercona Camera Corp.,*
   277 F.2d 94 (D.C. Cir. 1960) .................................................................. 14

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*,
    59 F. Supp. 2d 27 (D.D.C. 1999) ........................................................... 19

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ............................................................................... 17

*Taylor v. Blakey*,
    490 F.3d 965 (D.C. Cir. 2007) ........................................................... 6, 7

*Tuxedo Contractors, Inc. v. Swindell-Dressler Co.*,
    613 F.2d 1159 (D.C. Cir. 1979) ............................................................. 20

*United States ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir. 1981) ...................................................... 21, 22

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ................................................................ 16

*Urban v. United Nations*,
    768 F.2d 1497 (D.C. Cir. 1985) ......................................................... 9, 23

*Walker v. Seldman*,
    471 F. Supp. 2d 106 (D.D.C. 2007) ....................................................... 8

*Wallace v. Saffa*,
    No. 06-402 (RBW), 2007 WL 1020791 (D.D.C. Mar. 30, 2007) ........... 23

*Webb v. District of Columbia*,
    189 F.R.D. 180 (D.D.C. 1999) .............................................................. 11

*Williams v. Reilly*,
    No. 05-5136, 2005 WL 3980455 (D.C. Cir. Dec. 28, 2005) ................. 19

**Statutes**

15 U.S.C. § 1 ..................................................................................... 17

15 U.S.C. § 2 .............................................................................. 16, 17

15 U.S.C. § 1051 ................................................................................ 14

15 U.S.C. § 1063 ................................................................................ 12

15 U.S.C. § 1125(a) ........................................................................... 21

18 U.S.C. §§ 1961-68 ......................................................................... 18

28 U.S.C. § 1915(e)(2)(B) .................................................................. 23

28 U.S.C. § 1927 ...................................................................................................... 23

42 U.S.C. § 1983 ............................................................................................... 13, 15

D.C. Code § 28-4503 .............................................................................................. 17

D.C. Code Ann. § 36-401(2)(A)-(B) ...................................................................... 22

**Regulations**

37 C.F.R. § 2.120 ................................................................................................... 11

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................... 21

Fed. R. Civ. P. 11 .................................................................................................. 23

Fed. R. Civ. P. 12 .................................................................................................... 9

Fed. R. Civ. P. 37 .................................................................................................. 11

Fed. R. Civ. P. 41 .................................................................................................... 6

TTAB Manual of Procedure Rule 411.04 .............................................................. 11

TTAB Manual of Procedure Rule 527.01 .............................................................. 11

**Miscellaneous**

<http://en.wikipedia.org/wiki/Holodeck> ................................................................. 2

## PRELIMINARY STATEMENT

This action is the latest in a long-running series of similar—if not identical—actions brought by Plaintiff Dennis J. Solomon against a broad array of institutions, companies, and persons, including two prior actions against the University of Southern California ("USC") and others.  Mr. Solomon's prior complaints against USC were both dismissed, and the Court specifically enjoined Mr. Solomon from filing any further complaints without prior leave of court because of his history of filing numerous duplicative and meritless claims.  *See* Declaration of Howard S. Hogan, dated January 28, 2008 ("Hogan Decl.") Ex. 3 (Order and Opinion dated January 10, 2007) at 4.  As a result, Mr. Solomon's current complaint (the "Complaint") is barred both by the doctrine of *res judicata* and by an explicit order of the United States District Court for the District of Massachusetts.

The substance of Mr. Solomon's claims, moreover, does not withstand even minimal scrutiny.  Even granting Mr. Solomon the liberal rules of construction often afforded to *pro se* plaintiffs, Mr. Solomon has not—and cannot—allege the bare minimum facts necessary to sustain the five causes of action that he has asserted.  In fact, some of Mr. Solomon's own allegations affirmatively demonstrate that his causes of action are not viable.

Accordingly, for the reasons set forth in greater detail below, USC respectfully requests that the Court dismiss Mr. Solomon's current Complaint with prejudice and without leave to replead and further direct the Clerk of the Court not to accept any additional complaints from Mr. Solomon against any of the named defendants without leave of Court.

## BACKGROUND

A cursory search for cases on public record databases indicates that Mr. Solomon has filed at least fourteen distinct actions in federal or state courts over the past two decades, and at

least sixteen separate unsuccessful appeals after courts dismissed Mr. Solomon's claims. Hogan

Decl. Ex. 16 (printouts from different courts' electronic docket systems).[1]

Many of these actions relate to Mr. Solomon's claim that he invented a technology that

he refers to as a "holodeck," using a term popularized by the television show, *Star Trek: The*

*Next Generation*, which was aired in syndication from 1987 to 1994. *See, e.g.*,

<http://en.wikipedia.org/wiki/Holodeck>. In 1993, Mr. Solomon filed an application with the

United States Patent and Trademark Office ("PTO") to register the word "HoloDeck" as a

trademark on the PTO's Principal Register. Hogan Decl. Ex. 14. Mr. Solomon failed to take

further action on his filing for several years, and after multiple mailed notices, the PTO finally

marked Mr. Solomon's application as abandoned in February 1996. *Id.* Mr. Solomon filed a

petition to revive his application in July 1997, and the PTO ultimately allowed the application to

be revived in October 1998, despite further delay by Mr. Solomon. *Id.*

The PTO published the mark for opposition in 2000. *Id.* After publication, USC

promptly filed papers to oppose the registration of the mark. *Id.* Exs. 13 & 14. During the

opposition proceeding, Mr. Solomon refused to produce numerous documents on the grounds

that the discovery called for "confidential information" and that "information of substantial

competitive value . . . are not normally discoverable in a Trademark proceeding." *Id.* Ex. 12 at 6.

On June 21, 2001, USC moved to compel discovery, and on March 6, 2003, the PTO's

Trademark Trial and Appeal Board ("TTAB") ordered Mr. Solomon to provide the requested

discovery within thirty days. *Id.* at 12. Although USC also requested that the TTAB impose

---

[1] Even in a motion to dismiss, courts may look to public records of other proceedings "to avoid
unnecessary proceedings when an undisputed fact on the public record makes it clear that the
plaintiff does not state a claim upon which relief could be granted." *Covad Commc'ns Co. v.
Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

discovery sanctions against Mr. Solomon for noncompliance, the TTAB declined to do so at that time because Mr. Solomon's behavior was not yet "tantamount to a positive refusal to respond to discovery." *Id.* at 11.

Despite this clear warning, Mr. Solomon still refused to produce the materials at issue. Accordingly, USC moved for default judgment on June 18, 2003, *id.* Ex. 11, and the TTAB granted judgment against Mr. Solomon on August 6, 2004, *id.* Ex. 10 at 12. Mr. Solomon filed a request for reconsideration in September 2004, *id.* Ex. 9, which was denied in August 2007, *id.* Ex. 2 at 1 n.1.

Mr. Solomon filed his first affirmative complaint against USC in 2004 (the "2004 Complaint") in the United States District Court for the District of Massachusetts. *Id.* Ex. 8. The 2004 Complaint consisted of 207 paragraphs alleging various conspiracies and schemes to obtain Mr. Solomon's trade secrets and interfere with his business relations. *Id.* The district court summarily dismissed the 2004 Complaint because Mr. Solomon failed to prosecute it. *Id.* Ex. 7; *see also id.* Ex. 3 at 2 n.2. On appeal, the First Circuit transferred the case to the Federal Circuit, which dismissed after Mr. Solomon failed to pay the filing fees. *Id.* Exs. 5 & 6.

Mr. Solomon filed his second complaint against USC in 2006 (the "2006 Complaint"). *Id.* Ex. 4. The 2006 Complaint consisted of 191 paragraphs copied nearly verbatim from the 2004 Complaint. *Compare, e.g.*, *id.* Ex. 4 ¶¶ 93-104 *with id.* Ex. 8 ¶¶ 124-35. Accordingly, the district court dismissed the 2006 Complaint as barred by *res judicata*. *Id.* Ex. 3 at 3. Additionally, the court found that Mr. Solomon's claims were "meritless" and explicitly enjoined Mr. Solomon "from filing any further Complaints regarding the same or related subject matter without prior leave of court." *Id.* at 4.

Mr. Solomon's current Complaint repeats many of the salient allegations of his prior complaints.[2]  In brief, he alleges that he "has been actively involved in the science of lasers and holography since the 1970s" and has been commercially developing an invention called a "holodeck display" since the late 1980's.  Compl. ¶¶ 13-15.  Mr. Solomon's only allegations that he used the word "holodeck" in commerce is that he has "sales materials, published advertisements and conference publications," *id*. at 1-2, and that he displayed the word "holodeck" at a 1995 trade show, after which he allegedly received a cease-and-desist letter from Paramount Pictures, owners of the Star Trek franchise, *id.* ¶ 17.

The few specific allegations concerning USC are as follows:  USC received either $200 million (*id.* at 1) or $250 million (*id.* ¶ 24) from the U.S. Army to build a simulation project called the "holodeck."  After attempting to negotiate over the rights to the "holodeck" trademark, USC filed a trademark opposition proceeding against Mr. Solomon, allegedly at the direction of U.S. Army officer Michael Macedonia.  *Id.* ¶¶ 20-23, 36.  After some initial discovery, *id.* ¶¶ 25-27, USC's attorney filed a motion to compel production of "customer lists, detailed plans, and manuals" from Mr. Solomon, and this motion was granted, *id.* ¶¶ 28-29.  Mr. Solomon refused to produce discovery on the grounds that USC's attorney "was not an independent, outside attorney," and "had close ties to Solomon's direct competitors."  *Id.* ¶ 29.  USC subsequently

---

[2]  USC strenuously disputes many of the facts asserted in Mr. Solomon's Complaint, as well as all theories of liability against USC.  For the purposes of this motion only, USC assumes the specific, non-conclusory allegations of the Complaint as true and, where noted, addresses only those additional facts that are clearly demonstrated by the public record.

filed a motion for default judgment, which was granted by the TTAB, and "reconsideration denied." *Id.* ¶ 30.[3]

From these bare allegations, Mr. Solomon asserts five causes of action: "error, violation of civil rights, due process" (Count I); "lacking to standing" (Count II); "attempt to monopolize, interference with interstate commerce" (Count III); "fraud" (Count IV); and "interference with business relations, unfair competition" (Count V).

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS *RES JUDICATA*.

Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *See, e.g., Ivey v. United States Department of the Treasury*, 517 F. Supp. 2d 455, 458 (D.D.C. 2007) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Mr. Solomon's Complaint falls soundly within this doctrine because: (1) the parties in this suit are the same as the relevant parties from two prior Massachusetts actions; (2) a court of competent jurisdiction—the United States District Court for the District of Massachusetts—rendered judgments in both cases; (3) the judgments were on the merits; and (4) the gravamen of the causes of action in the prior suits and

---

[3] Many of Mr. Solomon's allegations, however, are demonstrably false. For example, Mr. Solomon states that the Trademark Office granted him a registration of the HoloDeck mark on May 30, 2000. Compl. ¶ 19. The public record clearly shows, however, that the PTO never approved the registration; it merely published the mark for opposition on that date. Hogan Decl. Ex. 14. In addition, Mr. Solomon has already unilaterally amended the Complaint in this action. In the version that he filed with this Court, Mr. Solomon alleged that Defendants' "actions caused substantial monetary damage to Solomon." Compl. ¶ 45. In the version served on USC, though, Mr. Solomon alleged that Defendants' "actions caused substantial monetary damage to Solomon *in excess of $3,000,000.*" Hogan Decl. Ex. 1 ¶ 45.

the current Complaint are identical. *See Lopez v. Huff*, 508 F. Supp. 2d 71, 76 (D.D.C. 2007)

(setting forth elements of *res judicata* defense).

      This action satisfies the first element of the *res judicata* test because Mr. Solomon and

USC were both named parties in two prior Massachusetts actions and in the present Complaint.

These facts satisfy the requirement of identity of parties. *See*, *e.g.*, *McLaughlin v. Bradlee*, 599

F. Supp. 839, 847-48 (D.D.C. 1984), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986).

      The second and third elements require a final judgment on the merits rendered by a court

of competent jurisdiction. There can be no dispute that the January 10, 2007 Order dismissing

the 2006 Complaint was a final judgment on the merits. *See* Hogan Decl. Ex. 3 (granting motion

to dismiss "with prejudice as to all defendants"). Nor can there be any dispute that the March 28,

2005 Order dismissing the 2004 Complaint was also a final judgment on the merits. *See id.*

Ex. 7 (dismissing Mr. Solomon's case "for failure of the Plaintiff to attend on the session of the

court and prosecute his case"). As the D.C. Circuit has held, a dismissal is with prejudice "by

operation" of Rule 41(b) unless the district court's order states otherwise. *Proctor v. Millar*

*Elevator Service Co.*, 8 F.3d 824, 825 (D.C. Cir. 1993); *see also* Fed. R. Civ. P. 41(b) ("Unless

the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an

adjudication upon the merits.").

      The final element requires an identity of the cause of action in both suits. The test in this

Circuit for determining whether two claims are the same for the purpose of *res judicata* is

whether they share a common "nucleus of facts." *Taylor v. Blakey*, 490 F.3d 965, 977 (D.C. Cir.

2007). The key factors are "whether the facts are related in time, space, origin, or motivation,

whether they form a convenient trial unit, and whether their treatment as a unit conforms to the

parties' expectations or business understanding or usage." *Id.* (quoting *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004)).

In his new Complaint, Mr. Solomon alleges five causes of action. Each one relies heavily on allegations from his complaints in the Massachusetts actions:

- In the 2004 and 2006 Complaints, Mr. Solomon described USC as having "knowingly and willfully conspired with the other Defendants to oppose the grant of the trademark HoloDeck for an unlawful purpose." Hogan Decl. Exs. 4 ¶ 28 & 8 ¶ 12. Mr. Solomon presently alleges an "unlawful conspiracy . . . to obtain the trademark HoloDeck." Compl. ¶ 35.

- Mr. Solomon previously alleged that "Dr. Michael Macedonia . . . requested that USC filed [sic] the opposition so that he and others could form a private corporation in competition with Solomon." Hogan Decl. Exs. 4 ¶ 95 & 8 ¶ 126. Mr. Solomon now alleges that "Macedonia unlawfully required USC to file the opposition in order to continue to receive U.S. Army funding." Compl. ¶ 36.

- In the 2004 and 2006 Complaints, Mr. Solomon alleged that "a majority of the relevant staff at USC testified that they were unfamiliar with the term [holodeck] prior to their employment at USC." Hogan Decl. Exs. 4 ¶ 96 & 8 ¶ 127. The present allegations state that "a majority of USC personnel testified that they had no knowledge of the term 'holodeck' until arriving at USC." Compl. ¶ 25.

- Mr. Solomon previously alleged that "Defendant Edelman failed to disclose that his firm represents Defendant Teledyne, a direct competitor of Solomon." Hogan Decl. Exs. 4 ¶ 99 & 8 ¶ 130. He again alleges that "Edelman was not an independent, outside attorney," and that Edelman had "close ties to Solomon's direct competitors, including Teledyne." Compl. ¶ 29.

- In his prior complaints, Mr. Solomon alleged that USC and others "used the process of opposition as an unlawful scheme to obtain Solomon's trade secrets." Hogan Decl. Exs. 4 ¶ 100 & 8 ¶ 131. The current Complaint alleges that "Edelman knowingly engaged in a criminal scheme to obtain trade secrets which he planned to convey to USC." Compl. ¶ 38.

- Mr. Solomon previously alleged that USC "used the process of opposition as [sic] to interfere with the ability of Solomon to raise funds and enter into beneficial contracts for his business." Hogan Decl. Exs. 4 ¶ 101 & 8 ¶ 132. He also claimed that USC "amended [its opposition] for the unlawful purpose of obtaining Solomon's trade secrets and to interfere [with] the business relations of Solomon." *Id.* Ex. 8 ¶ 12. Count V of the present Complaint is titled "Interference with Business Relations." Compl. ¶¶ 42-43.

- Mr. Solomon's prior complaints alleged that USC "defraud[ed] the U.S. government of at least $50 million dollars and endanger[ed] U.S. soldiers and citizens." Hogan Decl. Exs. 4 ¶ 103 & 8 ¶ 134. The present Complaint alleges that USC "conspired to defraud the U.S. Government," Compl. ¶ 41, and states that these actions caused "substantial harm and damages to the soldiers of the U.S. Army," *id.* ¶ 44.

The numerous parallel allegations demonstrate that all three of Mr. Solomon's complaints against USC arise out of the same transaction or occurrence, namely Mr. Solomon's theories about USC's attempts to steal his "HoloDeck" invention through the TTAB opposition proceeding. Accordingly, there is an identity between the causes of actions in the two suits.

This Court's recent decision in *Walker v. Seldman*, 471 F. Supp. 2d 106 (D.D.C. 2007), is instructive. As here, a *pro se* plaintiff brought conspiracy and fraud claims against the same defendants in a prior litigation. *Id.* at 110. As here, the prior court dismissed the action "on the merits, for want of prosecution," after providing a "full and fair" opportunity to litigate his claims. *Id.* at 113. As here, the *pro se* plaintiff filed a new action, and a comparison of the original complaint and the new complaint "ma[de] it abundantly clear that the RICO and civil rights claims ar[o]se from the same series of connected transactions adjudicated" in the prior action. *Id.* Finally, as here, "[n]o amount of discovery will change the fact that" Mr. Solomon's current Complaint "seeks recovery for claims that were brought, or should have been brought," in his prior action. *Id.* at 114 n.12.

Because all the requirements for *res judicata* are satisfied in this case, USC respectfully requests that the Court dismiss Mr. Solomon's Complaint with prejudice.

## II.    MR. SOLOMON'S COMPLAINT WAS FILED IN VIOLATION OF AN EXPLICIT COURT ORDER.

In addition to being *res judicata*, Mr. Solomon's Complaint is also improper because it clearly violates an explicit Court order barring him from bringing any further complaints regarding the same or related subject matter without leave of Court. Hogan Decl. Ex. 3. As

described above, the current Complaint clearly relates to the same transaction and occurrence described in the 2004 and 2006 Complaints, yet Mr. Solomon has not sought—let alone received—leave of Court to file the current Complaint. Accordingly, the case is not properly before this Court and should be dismissed. *See Martin-Trigona v. Gellis & Melinger*, 830 F.2d 367, 368 (D.C. Cir. 1987) (*per curiam*) ("When a party deliberately refuses to comply with an order, and persists in such refusal in the face of impending dismissal, the court has no choice but to use the remedy provided by Rule 41(b) to dismiss."). In the event that Mr. Solomon continues to violate this order, USC respectfully reserves the right to seek appropriate sanctions. *See*, *e.g.*, *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (courts are free to provide for contempt sanctions if plaintiff's litigious conduct is undeterred).

## III.    THE COMPLAINT SHOULD ALSO BE DISMISSED AGAINST USC ON THE MERITS.

Even setting aside the fact that Mr. Solomon's Complaint is barred as *res judicata*, and that Mr. Solomon was enjoined from filing it, the new Complaint also fails on the merits. To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must be sufficient 'to state a claim for relief that is plausible on its face.'" *Kopff v. World Research Group, LLC*, 519 F. Supp. 2d 97, 99 (D.D.C. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "[T]o provide the grounds of entitle[ment] to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Dye v. United States*, 516 F. Supp. 2d 61, 68 (D.D.C. 2007) (quotation marks omitted) (quoting *Twombly*, 127 S. Ct. at 1964-65)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S. Ct. at 1964. The Court may consider only "facts alleged in the complaint, any documents attached to or incorporated in the

complaint, matters of which the court may take judicial notice, and matters of public record."
*McManus v. District of Columbia*, Civ. A No. 07-252 (CKK), 2007 U.S. Dist. LEXIS 94797, at
*35 (D.D.C. Dec. 31, 2007).[4]

Although *pro se* complaints are held to a less stringent standard than complaints drafted
by attorneys, "a *pro se* plaintiff's inferences need not be accepted if such inferences are
unsupported by the facts set out in the complaint." *Dye*, 516 F. Supp. 2d at 68. Moreover, a *pro
se* plaintiff's complaint "must at least meet a minimal standard of what pleadings must entail."
*Green v. DOD Dependent Schools-Europe*, 514 F. Supp. 2d 79, 82 (D.D.C. 2007). In particular,
"pro se litigants still must comply with the Federal Rules of Civil Procedure." *Banks v.
Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007).

### A. Mr. Solomon's First And Second Counts Fail Because They Set Forth No Basis to Set Aside The TTAB Order Denying His Trademark Application.

Mr. Solomon's first two causes of action are labeled "Error, Violation of Civil Rights,
Due Process" and "Lacking to Standing." On their face, though, these claims are nothing more
than an attempt to appeal the TTAB's order denying his application to register the word
HoloDeck as a trademark. *See* Compl. ¶¶ 31-34. In particular, Mr. Solomon's Complaint seems
to allege that the denial of his trademark application was erroneous on two grounds: first, that
dismissal is not an "appropriate sanction" for non-compliance with discovery orders, *id.* ¶ 31;
and second, that the opposition hearing should have been dismissed for lack of standing because

---

[4] *See also Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C.
2003) (court may take "judicial notice of matters of a general public nature, such as court
records, without converting the motion to dismiss into one for summary judgment").

"USC would suffer no damages," *id.* ¶¶ 33-34.  These counts must be dismissed, though, because neither of these sets of allegations provides any basis for relief.

### 1. Dismissal Is An Appropriate Sanction For Non-Compliance With Discovery Orders.

Mr. Solomon admits in his Complaint that he failed to comply with the discovery order of the TTAB.  *See* Compl. ¶¶ 29-30.  Nevertheless, he claims that the TTAB erred in rendering a default judgment against him because "[e]xclusion of evidence is the appropriate sanction."  *Id.* ¶¶ 31-32.  This assertion is simply incorrect as a matter of black-letter law.

Courts in this Circuit and throughout the country have long recognized that entry of judgment is an appropriate sanction for discovery violations.  *See*, *e.g.*, *Webb v. District of Columbia*, 189 F.R.D. 180, 185 (D.D.C. 1999) (the "power to sanction discovery abuses with an entry of default was recognized by the United States Supreme Court in *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976)").  Indeed, Rule 37(b)(2) of the Federal Rules of Civil Procedure specifies that a court may "render[] a default judgment against the disobedient party" for not obeying a discovery order.  Courts, moreover, need not exhaust other sanctions before imposing a default judgment.  *Automated Datatron, Inc. v. Woodcock*, 659 F.2d 1168, 1169 (D.C. Cir. 1981) (affirming dismissal even though "a less drastic sanction might have been entertained," because "a trial judge must be equipped to call time on a party who had ample opportunity, prior to the eve of trial, to follow the court's clear instruction").

The procedures and rules established by the TTAB clearly set forth that "if a party fails to comply with an order of the [TTAB] relating to disclosure or discovery . . . the Board may make any appropriate order, including those provided in Rule 37(b)(2) of the Federal Rules of Civil Procedure . . . ."  37 C.F.R. § 2.120(g)(1); *see also* TTAB Manual of Procedure Rules 411.04, 527.01, <http://www.uspto.gov/web/offices/dcom/ttab/tbmp/> ("The sanctions which may be

entered by the Board [for failure to provide discovery] include . . . entering judgment against the disobedient party."). Accordingly, the dismissal order was well within the scope of the TTAB's authority.

Finally, not only was the TTAB's action procedurally proper, it was completely warranted under the circumstances. Mr. Solomon was on full notice that his intentional disregard for the TTAB's discovery orders could result in a default judgment against him. *See* Hogan Decl. Ex. 11, at 2 (providing notice to Mr. Solomon and citing authority for entry of judgment as an appropriate sanction for discovery non-compliance). The TTAB provided an extensive explanation of why it found entry of judgment to be an appropriate sanction. *See id.* Ex. 10. Among the reasons the TTAB listed for granting default judgment were that Mr. Solomon "has demonstrated little willingness to actually litigate this matter on the merits," *id.* at 9, that his explanation for non-compliance was "entirely unapologetic," *id.* at 12, and that "there is no indication that, if given a lesser sanction, [Mr. Solomon] would mend his ways and comply fully with the Board's rules and orders," *id.* at 11-12. Under these circumstances, the TTAB's grant of default judgment was appropriate and did not constitute error.

### 2. Defendant Had Standing To Oppose Plaintiff's Trademark Registration.

With his second cause of action, Mr. Solomon seems to be claiming that the TTAB erred because USC lacked standing to bring an opposition. *See* Compl. ¶¶ 33-34. Standing determinations for the TTAB are governed by Section 13 of the Lanham Act, 15 U.S.C. § 1063, which broadly states that "[a]ny person who believes that he would be damaged by the registration of a mark upon the principal register may . . . file an opposition." At most, the opposer must have a "real interest"—a direct and personal stake—in the outcome of the opposition. *See, e.g., Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999). USC had no

obligation to meet the constitutional requirements of "case or controversy," which do not apply to matters before administrative agencies such as the TTAB. *Id.* at 1094.

Mr. Solomon only asserts that USC "would suffer no damages from the grant of the trademark to Solomon." Compl. ¶ 33. He does not allege that USC lacked a real interest, or even any facts demonstrating why USC would suffer no damages. To the contrary, Mr. Solomon's Complaint itself highlights USC's interest in the HoloDeck mark. *See* Compl. ¶ 24 ("On or about 1999, USC had received $250 million dollars from the U.S. Army to build a holographic, virtual reality space which they were calling the holodeck."). As a result, Mr. Solomon's cause of action is directly contradicted by his own factual allegations, and his claim must fail. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (courts need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice").

**B.    Plaintiff's First Count Also Fails As A Civil Rights Claim.**

Alternatively, Mr. Solomon's first count may be read as a claim under either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it is titled in part "Violation of Civil Rights, Due Process." Even granting Mr. Solomon this liberal construction, he still has not stated a cognizable cause of action for at least three independent reasons.

*First*, Mr. Solomon seems to be claiming, at most, that the TTAB violated his procedural due process rights in granting a default judgment "without trial" for his deliberate refusal to comply with a discovery order of the TTAB. *See* Compl. ¶ 32. Mr. Solomon, however, cannot allege any facts to show that he was in fact denied notice or an opportunity to be heard. To the contrary, Mr. Solomon has had multiple opportunities to be heard. USC filed a motion for default judgment before the TTAB and served this motion on Mr. Solomon. Hogan Decl. Ex. 11. The TTAB specifically noted that "when the issue of default is raised by motion . . . the

motion serves the same function as a notice of default, providing notice to the applicant and an opportunity to demonstrate good cause for discharge of his default." *Id.* Ex. 10 at 3.  Indeed, Mr. Solomon even submitted a response brief to explain his failure to comply with the TTAB's discovery order, and the TTAB addressed each of his explanations at length, finding nonetheless that his reasons were "puzzling," "incomprehensible," "non-sequitur," and "specious." *Id.* at 3, 5, 7, 10.

*Second*, Mr. Solomon's "civil rights" claim also fails separately because "[t]he Due Process Clause requires procedural due process only where a person is deprived of a protected interest in liberty or property." *M.K. v. Tenet*, 196 F. Supp. 2d 8, 15 (D.D.C. 2001). Mr. Solomon's Complaint fails to specify any protected liberty or property interest of which he was deprived, or to provide a basis for the Court to surmise precisely which liberty or property interest Mr. Solomon believes is at issue.  It is black-letter law that a trademark registration is not a property right; it is only an administrative recognition of rights that a trademark owner obtains by using the mark in commerce.  *See*, *e.g.*, *Rogers v. Ercona Camera Corp.*, 277 F.2d 94, 98 (D.C. Cir. 1960) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . .  [T]he right to a particular mark grows out of its use not its mere adoption."); *Grand Canyon West Ranch, LLC v. Hualapai Tribe*, 78 U.S.P.Q.2d 1696, 1698 (T.T.A.B. 2006) ("It is clear that an applicant cannot obtain a registration . . . for goods or services upon which it has not used the mark.") (citing 15 U.S.C. § 1051).  Here, Mr. Solomon has only alleged that the

14

PTO has failed to register the word "HoloDeck," not that it has interfered with his ability to use it in commerce.[5]

    *Third*, Mr. Solomon's "civil rights" claim also fails because he has not alleged any facts indicating that the actions at issue occurred "under color of state or territorial law." *Bridges v. Kelly*, 977 F. Supp. 503, 506 (D.D.C. 1997), *aff'd*, 159 F.3d 635 (D.C. Cir. 1998). The only pertinent allegation in Mr. Solomon's Complaint is that "[t]he TTAB erred in granting a default judgment without trial." Compl. ¶ 32. The TTAB is the adjudicative component of a federal agency, and accordingly is not a state actor for the purposes of 42 U.S.C. § 1983. *See, e.g.*, *Haynes v. Health & Human Services*, 879 F. Supp. 127, 129 & n.3 (D.D.C. 1995), *aff'd*, 1997 U.S. App. LEXIS 16340 (D.C. Cir. 1997) (federal agency defendants not subject to suit under § 1983). Mr. Solomon also does not allege anywhere that the State of California, through USC, somehow provided the "mantle of authority" that enabled the TTAB to issue its decision. *See NCAA v. Tarkanian*, 488 U.S. 179, 191-92, 195-96 (1988) (holding that a state university does not turn a third party into a state actor unless it delegates power to take the action specified).

    Even if Mr. Solomon means to allege a federal deprivation of his civil rights under *Bivens*, his claim still fails. Courts have declined to extend *Bivens* liability either to federal agencies, such as the TTAB, or to other entities like USC who are sued "solely because of lesser links to the federal government." *See Kauffman v. Anglo-American School of Sofia*, 28 F.3d 1223, 1226-28 (D.C. Cir. 1994) (*Bivens* liability does not run against a federal agency, or other private or public entities alleged to have conspired with the federal agency); *Richards v. Duke University*, 480 F. Supp. 2d 222, 239 (D.D.C. 2007) (same).

---

  [5]  To the extent Mr. Solomon asserts a property interest in any underlying invention he may possess, his Complaint does not allege he has been deprived of it. *See* Compl., *passim*.

Accordingly, Mr. Solomon's civil rights and due process claims must be dismissed for failure to state a claim.

### C.    Plaintiff's Third Count, Alleging "Attempt To Monopolize, Interference With Interstate Commerce," Fails As A Matter Of Law.

#### 1.    Plaintiff Has Not Alleged The Necessary Elements Of A Sherman Act Claim.

The most straightforward interpretation of Mr. Solomon's third count is as an attempt to claim a violation of Section 2 the Sherman Act, which states that a person shall not "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2.  Nevertheless, Mr. Solomon must do more than "simply paraphrase the language of the federal antitrust laws or state in conclusory terms that a defendant has violated those laws." *Dial A Car, Inc. v. Transportation, Inc.*, 884 F. Supp. 584, 588 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996).  Indeed, there are at least three independent reasons why this claim cannot succeed.

*First*, even taking all allegations as true, Mr. Solomon has failed to identify the relevant market; in fact, he has not even alleged that a market for his claimed invention exists.  Plaintiffs cannot assert a Sherman Act claim without defining the relevant market because it "establishes a context for evaluating the defendant's actions . . . ." *United States v. Microsoft Corp.*, 253 F.3d 34, 81 (D.C. Cir. 2001).  At most, Mr. Solomon alleges that he has "sales materials, published advertisements and conference publications" relating to his claimed invention, Compl. at 1-2, but none of these demonstrate the existence or even plausibility of an actual market.  *See*, *e.g.*, *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (affirming dismissal, without factual inquiry, where plaintiff failed to define the relevant market).

*Second*, Mr. Solomon cannot assert any specific intent by Defendant to monopolize a particular market.  Reading the Complaint liberally, Mr. Solomon has alleged at most an intent

on the part of USC to create a "holodeck," Compl. ¶ 24, and to obtain rights to use the trademark "HoloDeck," *id.* ¶ 35.  This constitutes legitimate competition, and is insufficient to plead an attempted monopolization claim under the Sherman Act.  *See Ass'n for Intercollegiate Athletic for Women v. NCAA*, 735 F.2d 577, 585-86 & n.11, n.13 (D.C. Cir. 1984) (stating that a failure to prove "[defendant's] conduct derived from a specific intent to monopolize suffices to dispose of [plaintiff's] conclusory charge of a conspiracy to monopolize").

*Third*, Mr. Solomon has provided no reason to suggest that there is a "dangerous probability" that USC would monopolize a particular market.  As a threshold matter, dangerous probability of monopolization cannot be inferred without any proof of the relevant market.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456-60 (1993) (no liability for attempted monopolization "absent proof of a dangerous probability that they would monopolize a particular market").  More importantly, the current Complaint simply does not show that any of the alleged acts had an "anticompetitive impact on the market." *Dial A Car*, 884 F. Supp. at 589 ("[A]ntitrust laws were not intended to prevent losses that result from increased competition but those resulting from activity that may tend to lessen competition.").  Mr. Solomon does not allege that USC ever stopped him from offering goods or services, only that USC opposed the registration of the HoloDeck mark and sought to develop its own product.  As a matter of law, this is insufficient to state a claim for attempted monopolization. *See, e.g.*, *id.*[6]

---

[6] Alternatively, Mr. Solomon may intend to assert a claim under D.C. Code § 28-4503.  This provision "essentially track the language of [§ 2] of the Sherman Act" and any such claim fails for the same reasons that Mr. Solomon has not stated a Sherman Act claim. *GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27, 45 (D.D.C. 1998).  Any such claims also fail because Mr. Solomon has not alleged that there is a market for his invention within the District of Columbia.  D.C. Code § 28-4503 ("all or any part of" the trade or commerce allegedly subject to monopolization must be "within the District of Columbia").

### 2. Even Reading Plaintiff's Third Count As A RICO Claim, It Still Lacks The Necessary Elements.

Alternatively, Mr. Solomon may intend for his claims of "unlawful conspiracy" and "[i]nterference with [i]nterstate [c]ommerce," scattered throughout the Complaint, to state a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"). These scattershot allegations are insufficient to state a RICO claim as a matter of well-settled law. *See*, *e.g.*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (stating that where plaintiffs allege only a single scheme, a single injury, and few victims, it is "virtually impossible for plaintiffs to state a RICO claim").[7]

Here, Mr. Solomon's allegations contemplate at most one "scheme" centering essentially on his claimed "HoloDeck" invention. Even accepting Mr. Solomon's numerous hyperboles, these allegations do not assert a "pattern of racketeering activity" required to sustain a RICO claim. *See Committee to Defend U.S. Constitution v. Moon*, 776 F. Supp. 568, 571-73 (D.D.C. 1991) (requiring relatedness and continuity among the predicate acts).

Moreover, any RICO claim by Mr. Solomon must also fail because he has not and cannot allege facts to show proximate causation, or "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Mr. Solomon only states that the "aforementioned actions caused substantial monetary damage." Compl. ¶ 45. Even when read liberally, his Complaint does not provide any supporting facts to suggest how USC's alleged actions led directly to Mr. Solomon's losses—or

---

[7] Mr. Solomon cannot claim that he did not know how to state a RICO claim. In previous *pro se* actions that Mr. Solomon has filed in federal court, he specifically asserted violations, and sought relief, under 18 U.S.C. § 1962. *See, e.g.*, Hogan Decl. Ex. 15 at 3:22, 20:23, ¶¶ 50, 58.

even what those losses might have been.  *See* Compl., *passim*.  Under these circumstances, courts routinely dismiss RICO counts for failure to state a claim.  *See*, *e.g.*, *Williams v. Reilly*, No. 05-5136, 2005 WL 3980455 (D.C. Cir. Dec. 28, 2005) (dismissing RICO claim because appellant "offers no cogent explanation of how the alleged conspiracy caused the purported damages").

### D.    Plaintiff's Fifth Count, "Interference with Business Relations, Unfair Competition," Is Insufficient As A Matter Of Law.

#### 1.    Plaintiff's Own Allegations Contradict The Elements Of An Interference With Business Relations Claim.

Mr. Solomon's allegation that USC engaged in "[i]nterference with [b]usiness [r]elations," Compl. ¶¶ 42-43, appears to assert one of two related torts recognized by the District of Columbia:  intentional interference with contractual relations or tortious interference with prospective economic advantage.  Mr. Solomon cannot allege the elements of either claim.

*First*, Mr. Solomon has not alleged any existing contractual relationships or even any commercially reasonable business expectancies related to the HoloDeck mark.  *See* Compl., *passim*.  As a result, Mr. Solomon's "Interference with Business Relations" claim must fail.  *See, e.g.*, *EDM & Assocs., Inc. v. GEM Cellular*, 597 A.2d 384, 388 (D.C. 1991) (complaint that does not allege existence of a valid contract must be dismissed); *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (complaint that does not allege business opportunities that are "commercially reasonable to expect" must be dismissed).  Mr. Solomon has not alleged—and has specifically refused to produce—anything of substance that might possibly suggest a current contract or a commercially viable business expectancy, such as customer lists, detailed plans, or manuals.  *See* Compl. ¶¶ 28-30.

*Second*, Mr. Solomon also cannot allege any breach of contract or loss of business expectancy because he has not pointed to the *existence* of any such contract or business

19

expectancy.  *See*, *e.g.*, *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 43 n.7 (D.D.C. 2005) (stating that plaintiffs must plead "an actual breach of the contract").

*Third*, Mr. Solomon cannot allege that USC knew about any contracts or business relationships he may have had.  In fact, Mr. Solomon has alleged the exact opposite, as his Complaint readily acknowledges that he has repeatedly refused to provide customer lists to USC.  *See* Compl. at 1-2, ¶¶ 28-30.  This also is fatal to his claim.  *See, e.g.*, *Tuxedo Contractors, Inc. v. Swindell-Dressler Co.*, 613 F.2d 1159, 1163 (D.C. Cir. 1979) (there can be no liability where defendant did not have sufficient knowledge of the contract at issue).

*Fourth*, Mr. Solomon's claim also fails because he cannot allege any facts from which one could conclude that USC *intentionally* interfered with these hypothetical contracts and business relations.  "A general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability."  *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988).  Here, Mr. Solomon alleged that he successfully thwarted any plan by USC to learn the identities of his customers.  As a result, he cannot allege that USC interfered or intended to interfere with any specific relationships.

For all these reasons, Mr. Solomon has failed to state a claim for interference with contractual or business relations.[8]

---

[8] Mr. Solomon also cannot state a claim for the related D.C. common law tort of unfair competition.  To survive a motion to dismiss, a D.C. common law unfair competition claim must establish an interference with the plaintiff's prospective advantage that is even "more egregious, for example, it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement."  *See, e.g., Genetic Sys. Corp.*, 691 F. Supp. at 407.  Because Mr. Solomon has alleged neither the prospective advantage nor any intentional interference by USC, he also has not alleged that USC unfairly competed with him for such an opportunity.  *Id.*

2.    **Plaintiff Cannot Allege The Elements Of A Lanham Act Unfair
      Competition Claim.**

Alternatively, Mr. Solomon may mean for the "Unfair Competition" part of Count V to

assert a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Any such claim

would also fail, though, because Mr. Solomon has not alleged that any consumers are likely to be

confused by USC's use of the mark.  *See, e.g.*, *Brown v. Twentieth Century Fox Film Corp.*, 799

F. Supp. 166, 173 (D.D.C. 1992) ("Under both section 43(a) of the Lanham Act and the common

law of unfair competition, the 'ultimate test' is whether consumers are likely to be confused as to

origin or endorsement."), *aff'd*, 15 F.3d 1159 (D.C. Cir. 1994).  At most, Mr. Solomon has

alleged that USC referred internally to an invention as a "holodeck," not that USC was offering

any goods or services to the public under the name "holodeck."  *See* Compl. ¶ 24.  To the

contrary, Mr. Solomon alleges that even "USC scientists . . . had no knowledge of the term

'holodeck' prior to employment by USC."  *Id.* at 1, ¶ 25.  As a result, there can be no consumer

confusion and no liability under the Lanham Act.

E.    **Plaintiff's Fraud Claim, Count IV, Does Not Allege Any Fraud
      Against Himself.**

Mr. Solomon's last stated cause of action is for fraud, but again, he has not met the

minimal pleading requirements.  Although *pro se* litigants are treated less stringently with

respect to procedural requirements, a *pro se* complaint remains "'subject to dismissal if the

pleading fails reasonably to inform the adverse party of the asserted cause of action.'"  *Johnson*

*v. Chase Manhattan Mortgage Corp.*, No. 04-344 (EGS), 2006 U.S. Dist. LEXIS 60760, at *10-

11 (D.D.C. Aug. 28, 2006) (quoting *Brown v. Califano*, 75 F.R.D. 497 (D.D.C. 1977)); *see also*

Fed. R. Civ. P. 9(b).

Mr. Solomon's fraud claim fails because he does not state the particular circumstances of

the alleged fraud, including the "time, place and content of the false misrepresentations."  *United*

*States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). He also does not provide any indication of what, if any, action he took to his detriment in reliance of the alleged fraud. *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (plaintiff may not assert claim for common law fraud or negligent misrepresentation without alleging that plaintiff acted in reliance upon the alleged misrepresentation). In support of his claim of fraud, Mr. Solomon alleges only that USC has been "unable to build a three dimensional, virtual reality space," and that USC "conspired to defraud the U.S. Government by submitting proposals based on unlawful [sic] obtained designs of Solomon." Compl. ¶¶ 40-41. Even if construed liberally, these are only allegations that USC defrauded either the U.S. Government or the TTAB, not Mr. Solomon. They do not provide Mr. Solomon with a valid cause of action. *See*, *e.g.*, *Cannon*, 642 F.2d at 1385 (affirming dismissal with prejudice where the allegations were "generalized and vague").

### F. Any Trade Secret Misappropriation Claim Also Fails As A Matter Of Law.

Although Mr. Solomon does not set forth a separate claim for misappropriation of trade secrets, he does allege a "scheme to obtain trade secrets." Compl. ¶ 38. Even construing this allegation liberally as a separate count, it also fails as a matter of law. Mr. Solomon's sole allegation is that USC or its attorney *planned* to obtain certain trade secrets from Mr. Solomon through the TTAB process. Compl. ¶ 38. Indeed, the Complaint clearly asserts that Mr. Solomon prevented this plan from coming to fruition by refusing to comply with the TTAB's discovery order. *Id.* ¶¶ 28-30.

This is not enough to state a trade secrets misappropriation claim. The District of Columbia Uniform Trade Secrets Act prohibits only the "[a]quisition of a trade secret" or the "disclosure or use of a trade secret." D.C. Code Ann. § 36-401(2)(A)-(B). It provides no liability for the *intended* acquisition or disclosure of a trade secret. And because the Uniform

22

Trade Secrets Act is designed to "make uniform the law with respect to trade secrets," it specifically preempts any other common law theories of liability, including conspiracy. *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 n.9, 84 (D.D.C. 2007). As a result, Mr. Solomon simply cannot maintain any trade secrets misappropriation claim.

## IV.    GIVEN PLAINTIFF'S LENGTHY HISTORY OF VEXATIOUS LITIGATION, AN ORDER LIMITING ANY ADDITIONAL FILINGS IS APPROPRIATE.

USC respectfully requests that Mr. Solomon's Complaint be dismissed without leave to replead. Based on the extensive history of litigation by Mr. Solomon, any additional amendment of this Complaint would be futile. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.21 (D.C. Cir. 1983) (denying leave to amend because "courts are not obliged to indulge litigants indefinitely, especially when their amendments constitute futile gestures").

In addition, USC also respectfully requests that the Court's order in this case further enforce the terms of the existing injunction against Mr. Solomon, Hogan Decl. Ex. 3, and prevent any additional abusive filings. This Court has broad powers to prevent abusive filings pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, 28 U.S.C. § 1915(e)(2)(B), and this Court's inherent powers. *See*, *e.g.*, *Urban*, 768 F.2d at 1500 ("[T]he court has an obligation to protect and preserve the sound and orderly administration of justice.").[9] In keeping with this authority, USC respectfully requests that the Court direct the Clerk of the Court not to

---

[9] *See also Wallace v. Saffa*, No. 06-402 (RBW), 2007 WL 1020791 (D.D.C. Mar. 30, 2007) (invoking Rule 11 and inherent powers to enjoin *pro se* plaintiff from filing any further lawsuits of any kind); *Mikkilineni v. Penn Nat'l Mutual Casualty Ins. Co.*, 271 F. Supp. 2d 142, 148 (D.D.C. 2003) (barring additional complaints by *pro se* plaintiff who "re-files complaints and motions . . . whenever he is not satisfied with court orders, thereby harassing the defendants and abusing the judicial system"); *FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 18-19 (D.D.C. 2007) (enjoining all pending and future proceedings in federal or state court under the court's inherent powers and the All Writs Act).

accept any additional complaints from Mr. Solomon against any of the defendants named in this action unless Mr. Solomon first obtains the explicit permission of the Court.

## CONCLUSION

For the foregoing reasons, USC respectfully requests that this Court dismiss Mr. Solomon's Complaint against USC with prejudice and direct the Clerk of the Court not to accept any further complaints from Mr. Solomon against any of the defendants named in this action unless Mr. Solomon first obtains leave of the Court.  If Mr. Solomon continues this litigation, USC respectfully reserves its rights to seek appropriate sanctions.

Dated:  January 28, 2008

Respectfully submitted,

_____/s/ Howard S. Hogan_____
Howard S. Hogan
(D.C. Bar No. 492002)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Attorneys for University of Southern California*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2008, I caused copies of the foregoing to be transmitted via overnight delivery and U.S. Mail to opposing party:

Dennis J. Solomon
P.O. Box 289
Yarmouth Port, MA 02675
Telephone: (508) 394-9221

/s/ Howard S. Hogan
Howard Hogan